IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| T.G., *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>    Defendants. | Civil Action No.  21-03112 |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION**

In this action and at this time, injunctive relief is necessary to prevent irreparable injury to a disabled child and to protect his right to a free appropriate public education ("FAPE")[1], under the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, Education of the Deaf Act ("EDA"), 20 U.S.C. § 4304, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*  However, T.G. has been left with no appropriate educational placement by defendants, his local educational agency, District of Columbia Public Schools ("DCPS" or "school system"), and the Kendall Demonstration Elementary School ("KDES"), the school he has been attending for many years, and is currently indefinitely at home receiving no educational services and regressing.  The parents have previously been informed that Kendall believes that T.G. can no longer attend KDES and, because of that, they have agreed to explore alternate appropriate placements.  However, while

---

[1]    A FAPE is defined as "special education and related services that – (A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary, or secondary school education in the State involved;  and (D) are provided in conformity with the individualized education program . . . ." 20 U.S.C. §1401(9); *see also*, 34 C.F.R. § 300.17.

the search for an alternate placement continues to be underway, the parents have been informed that KDES cannot locate appropriate staffing to support T.G. and that he is no longer welcome to attend, leaving him at home and receiving no educational services.  Furthermore, plaintiffs have attempted to pursue this matter through administrative due process hearings, but as of right now, no Hearing Officer has been assigned to their due process complaint against KDES, leaving them with no way to file a motion to enforce T.G.'s "stay put" rights there.

As set forth below, time is of the essence in this case.  T.G. cannot wait any longer for an appropriate educational program to be located.  As such, plaintiffs are asking this Court for injunctive relief, an Order requiring DCPS and KDES to maintain T.G.'s placement at KDES without further delay.

I.      **FACTUAL BACKGROUND**[2]

T.G. is a thirteen-year-old student who has been found eligible for special education services by DCPS as a student with Multiple Disabilities, including a mild Intellectual Disability and a Hearing Impairment.  See Declaration of Jim Gerstein (attached as Exhibit A).  He is diagnosed with CHARGE syndrome which is associated with a number of serious and complicated medical and cognitive issues, and he also has profound bilateral sensorineural hearing loss, limited vision, issues with his kidneys, sleep apnea, and several other medical complications.  *Id.*  T.G. has attended KDES since he was very young and has made progress there.  *Id.*

During the 2020-21 school year, KDES agreed to continue to serve T.G. during virtual

---

[2]     Plaintiffs hereby incorporate the Factual Allegations of the Complaint filed in this action simultaneously with this Motion as if included herein.

instruction, but concluded that it was not an appropriate placement once school returned to in-person learning due to the fact that the language of instruction at KDES is American Sign Language ("ASL"), not spoken English.  *Id.*  T.G. learns best in an environment where spoken English is the language of instruction, with ASL provided to support his expressive and receptive language needs.  *Id.*  On June 10, 2021, KDES sent a letter to DCPS stating the same.  See June 10, 2021 Letter to DCPS (attached as Exhibit B).  However, KDES has been able to implement T.G.'s IEP with the assistance of a one-to-one aide who can translate ASL to spoken English for T.G.; he has been making progress there.  Exhibit A.

The parents have agreed to work with DCPS to explore alternate programs, but as of the date of the filing of this motion, no alternate placement has been identified.  Exhibit A.  On August 2, 2021, KDES sent the parents a letter stating that they would not be enrolling T.G. for the 2021-22 school year and would work with DCPS to find a new placement for him.  See August 2, 2021 Letter to Parents (attached as Exhibit C).  The parents have followed up with DCPS on multiple occasions about the status of T.G.'s placement for the current school year, but have not received further guidance.  See Exhibit A; Emails between parents and DCPS (attached as Exhibit D).  DCPS has also informed the parents that it cannot force KDES to change its position.  *Id.*

The parents filed a due process complaint against DCPS on August 5, 2021 invoking T.G.'s "stay put" rights at KDES until an appropriate alternative program and placement is identified for consideration (attached as Exhibit E).  The parents filed a motion for enforcement of "stay put" rights, and on August 24, 2021, Hearing Officer Terry Michael Banks granted the parents' motion for enforcement of "stay put" rights.  See August 24, 2021 Order on Parents'

Motion for Enforcement of "Stay Put" Rights (attached as Exhibit F). The Hearing Officer ordered DCPS to place and fund T.G. at KDES during the pendency of the due process proceeding. He further ordered that if T.G. were to be denied access to KDES during the administrative proceedings, the parents were authorized to secure alternative educational providers capable of providing services consistent with T.G.'s IEP and that DCPS would be required to fund those services.

T.G. began the 2021-22 school year at KDES and has continued to make progress in the program. Exhibit A. Throughout the fall of 2021, the parents have cooperated with DCPS to locate an alternate appropriate program for T.G. Exhibit A. However, as of the date of the filing of this complaint, no alternate placement has been identified for T.G. by the parents or DCPS, although the parents remain hopeful that one program, Kennedy Krieger at Powder Mill, may be able to provide appropriate services to T.G. Exhibit A.

Because of the positive direction of the alternate school search process and informal knowledge that KDES would continue to maintain his placement, on October 26, 2021, the parents withdrew their due process complaint against DCPS. Letter withdrawing hearing request, October 26, 2021 (attached as Exhibit G); Exhibit A. On October 28, 2021, the parents received an email from KDES informing them that they had been informed by DCPS that KDES was no longer T.G.'s location of service as of October 27th. October 28, 2021 Email from Heidi Burns (attached as Exhibit H). This was the first the parents heard of any change to T.G.'s placement, nor had the parents received any communication from DCPS about a new location of service. Exhibit A. On October 28, 2021, the parents refiled their hearing request against DCPS and again invoked T.G.'s "stay put" rights at KDES. See October 28, 2021 Letter filing due process

complaint (attached as Exhibit I).

Shortly after the parents again filed a motion to enforce T.G.'s "stay put" rights, the parties reached an agreement for him to remain at KDES during the pendency of the appeal. Exhibit A.

However, KDES has now informed the parents and DCPS that is has been unable to secure the additional staffing needed to support T.G. and that he is no longer welcome to keep attending the program. See Emails between parents, DCPS and KDES, November 2-4, 2021 (attached as Exhibit J); Exhibit A. DCPS has offered the parents an interim placement at Hardy Middle School ("Hardy"), but it is not appropriate to meet T.G.'s needs. *Id.* When the parents visited the proposed interim placement at Hardy, DCPS informed them that it could not complete the hiring of an aide to support T.G. until he enrolled in the program, leaving him with no current appropriate staffing. Exhibit A.

On November 17, 2021, the parents filed a due process complaint against KDES, invoking the Clerc Center's provision for students to maintain their placement while the due process proceedings are underway. See Complaint against KDES (attached as Exhibit K). However, as of the date of the filing of this complaint, no Hearing Officer has been assigned to the matter with KDES, leaving the parents no way to file a motion for enforcement of T.G.'s "stay put" rights. Exhibit A.

On November 22, 2021, the parents, DCPS, and KDES met with staff from Kennedy Krieger Powder Mill. Exhibit A. However, as of the time of the filing of this complaint, T.G. has not been accepted and it is expected to be at least until January 2022 until he could be offered to begin placement there.

T.G. currently has nowhere to attend school and remains at home receiving no

educational services. Exhibit A. He has significantly regressed during his time out of school, both academically and behaviorally. *Id.*

As of the date of the filing of this motion, no alternative placement has been identified for T.G. for the 2021-22 school year and T.G. continues to have nowhere to attend school. Exhibit A.

## II. PLAINTIFFS HAVE EXHAUSTED ADMINISTRATIVE REMEDIES.

There exist no further viable administrative remedies for plaintiff to attempt to exhaust. The parents filed a due process complaint against DCPS seeking a finding that the school system is denying T.G. a FAPE, as well as invoking T.G.'s "stay put" rights at KDES until an appropriate alternative program and placement is identified for consideration. Exhibit E. The parents have also filed a due process complaint against KDES. Exhibit K. However, despite obtaining an order on maintenance of T.G.'s placement at KDES, KDES has refused to permit him to return to the program and he has remained home with no instruction for nearly a month. Plaintiffs have no other option to pursue administrative remedies.

## III. KDES IS T.G.'S CURRENT EDUCATIONAL PLACEMENT.

The IDEA provides that, "during the pendency of any proceeding conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child . . . . until all such proceedings have been completed." 20 U.S.C. § 1415(j). This statutory injunction is commonly referred to as the "stay put" provision. The Supreme Court and the federal regulations promulgated pursuant to the IDEA are clear that a child's then-current placement is the last

agreed-upon placement, including a placement resulting from a due process appeal. See, 34 C.F.R. § 300.518(d);[3] *Town of Burlington v. Department of Educ. for the Commonwealth of Massachusetts*, 736 F.2d 773 (1st Cir. 1984), *aff'd*, *Burlington Sch. Comm. v. Dep't of Educ.*, 471 U.S. 359 (1985). The United States Court of Appeals for the District of Columbia recently confirmed this, explaining, "[u]nder the stay-put provision, when a parent challenges a school district's decision to move (or not to move) a child to a new educational placement, the school district must keep the child in the 'then-current educational placement' until the end of the proceedings, unless the parents and the school district agree otherwise." *K.P. v. Dist. of Columbia*, 690 Fed. Appx. 10, 11 (D.C. Cir. 2017).

T.G. has been at KDES for many years. During his last annual review meeting in May 2021, KDES was identified as his current placement. See May 18, 2021 IEP cover page (attached as Exhibit L). KDES is clearly identified as T.G.'s School/Site. *Id.*

Under the IDEA, T.G. has "stay put" protection at KDES until either (1) the parents can reach agreement with DCPS that an alternative placement is appropriate, or (2) the judicial process determines that the school system offered T.G. a different appropriate placement as of a particular date. *See, e.g., Susquenita Sch. Dist. v. Raelee S.*, 96 F.3d 78 (3dCir. 1996) (citing *Drinker*, 78 F.3d at 865) ("a child should remain in that placement pending resolution of the litigation at least at the district court level."). There can be no other placement here. T.G. has attended KDES for many years and DCPS has not even proposed another

---

[3] Paragraph (a) states, "Except as provided in § 300.533, during the pendency of any administrative or judicial proceeding regarding a due process complaint notice requesting a due process hearing under § 300.507, unless the State or local educational agency and the parents of the child agree otherwise, the child involved in the complaint must remain in his or her current educational placement." 34 C.F.R. § 300.518(a).

placement, despite the full cooperation of the parents.  Therefore, DCPS must maintain his placement at KDES during the pendency of this appeal.

District of Columbia law also directs that a parent has a right to "stay put" protection when the school system proposes, "a fundamental change in, or elimination of, a basic element of the [then-current education placement]." *Laster v. District of* Columbia, 394 F. Supp. 2d 60, 64 (D.D.C. 2005) (quoting *Lunceford v. Dist. of Columbia Bd. of Educ.*, 745 F.2d 1577, 1582 (D.C. Cir.1984)).  A parent seeking a "stay put" injunction must point to, "a fundamental change in, or elimination of a basic element of the education program in order for the change to qualify as a change in educational placement." *Id*.  Furthermore, although the IDEA does not define the term "then-current educational placement," the meaning of the term, "falls somewhere between the physical school attended by a child and the abstract goals of a child's [individualized education program] IEP." *Id.* at 65 (citation omitted); *Eley v. District of Columbia*, 47 F. Supp. 3d 1 (D.D.C. 2014) ("the location where educational services are to be implemented is a vital portion of a student's educational placement"); *see also Spilsbury v. District of Columbia*, 307 F. Supp. 2d 22, 26-27 (D.D.C. 2004) (explaining that "the IDEA clearly intends 'current educational placement' to encompass the whole range of services that a child needs" and that the term, "cannot be read to only indicate which physical school building a child attends").

In T.G.'s case, such a discussion is not even necessary because no other program or placement has been proposed for him.  In other words, KDES is literally the only program available that has been shown to be appropriate.  The IDEA provides this "stay put" protection for a student's current educational placement as a means of preserving the *status quo* of the student's educational placement and program until underlying IDEA litigation is resolved.  *See*

*e.g., Drinker by Drinker v. Colonial Sch. Dist.*, 78 F.2d 859, 865 (3rd Cir. 1996).

And, of course, T.G.'s "stay put" rights apply to his placement at KDES. KDES is federally created, funded, and is not a private institution. On its website, KDES describes itself as, "a demonstration school of the Laurent Clerc National Deaf Education Center at Gallaudet University." https://kdes.gallaudet.edu/about/. The website further describes: "The Clerc Center, a federally funded national deaf education center, ensures that the diverse population of deaf and hard of hearing students (birth through age 21) in the nation are educated and empowered and have the linguistic competence to maximize their potential as productive and contributing members of society." *Id.*

KDES was established through Congressional Act. Within the statute, 20 U.S.C. § 4304 governs the operation of the Clerc Center. That section specifies that if an LEA refers a child to, or places a child in, the program to meet its obligation to offer students a FAPE under the IDEA, "the agency or unit shall be responsible for ensuring that the special education and related services provided to the child by the education program are in accordance with part B of that Act and that the child is provided the rights and procedural safeguards under section 615 of that Act." 20 U.S.C. § 4304(b)(3). In accepting T.G. for his first year at KDES, and in continuing his placement at KDES through the 2020-21 school year, KDES and DCPS explicitly understood T.G.'s explicit rights under the IDEA. These rights, of course, include "stay put" protection.

Further, KDES has recognized "stay put" protection for its students in the Procedural Safeguards provided to the parents See KDES Procedural Safeguards (attached as Exhibit M). That document specifically confirms the right of a parent to file a due process complaint over their child's educational program and placement and that the child must remain in his or her

current educational placement during the proceedings, unless the parents and the Clerc Center agree otherwise.  Exhibit M, p. 9, 12.

Therefore, KDES is T.G.'s only agreed-upon placement and must be maintained.

### IV.     PLAINTIFFS ARE ENTITLED TO AN AUTOMATIC STAY.

Plaintiffs are entitled to injunctive relief to enforce the "stay put" provision.  When a parent invokes "stay put" protection in a federal court, it is not necessary to exhaust all administrative remedies as would be true with other actions premised on the IDEA.  *Vinyard*, 901 F. Supp. 2d at 83-84; *Alston v. District of Columbia*, 439 F. Supp. 2d 86, 91 (D.D.C. 2006) (citing *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002)). Rather, the need for expediency in resolving "stay put" issues makes even the administrative process too slow, necessitating immediate intervention by federal court.  *Murphy*, 297 F.3d at 199.

Critically, when parents seek an injunction to enforce "stay put," they also need not adhere to the traditional four-factor standard for a preliminary injunction.  *Vinyard*, 901 F. Supp. 2d at 84;  *Alston*, 439 F. Supp. 2d at 91-92; *Moore v. District of Columbia,* Slip Copy, 2009 WL 1097489 (D.D.C. April 22, 2009); *F.S. ex rel. Snyderman v. District of Columbia*,  2007 WL 1114136 (D.D.C. 2007); *Andersen by Andersen v. District of Columbia*, 877 F.2d 1018, 1024 (D.C. Cir. 1989) (contrasting "stay put" motions before the District Court, which need not satisfy the traditional four-factor test for a preliminary injunction, with "stay put" motions before the Circuit Court of Appeals, which must do so); *Cochran v. District of Columbia*, 660 F.Supp. 314, 319 (D.D.C. 1987);  *Saleh v. District of Columbia,* 660 F.Supp. 212, 215 (D.D.C. 1987) (the parents are entitled to an automatic preliminary injunction without any additional showing); *Doe*

*v. Maher,* 793 F.2d 1470, 1486 (9th Cir. 1986), aff'd, *Honig v. Doe*, 484 U.S. 305 (1988); *Zvi D. by Shirley D. v. Ambach,* 694 F.2d 904, 906 (2d Cir. 1982); *Casey K. ex rel. Norman K. v. St. Anne Community High School Dist. No. 302*, 400 F.3d 508, 511 (7th Cir. 2005). The reason is clear; "stay put" placement in the IDEA is a statutory injunction and all that need be proven are the facts supporting the application of the injunction.

Instead of the traditional four-factor standard for injunctive relief, the proper test for the Court in evaluating a "stay put" injunction is whether there is a pending appeal – administrative or judicial – involving a proposed change of placement. Here there clearly is; therefore "stay put" protection should be invoked.

Finally, plaintiffs note that, despite not being necessary to apply in this action, the traditional four-part standard for injunctive relief should be considered here as it relates to the relative harm to the parties. Those factors are set out in *Virginia Petroleum Jobbers Ass'n v. Federal Power Commission*, 259 F.2d 921, 925 (D.C. Cir. 1958); *see also Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977) in a four part test:

    A.    Has the petitioner made a strong showing that it is likely to prevail on the merits?
    B.    Has the petitioner shown that without such relief it will suffer irreparable injury?
    C.    Would the issuance of the injunction substantially harm other interested parties?
    D.    Wherein lies the public interest?

In T.G.'s case, there will be significant, irreparable harm to plaintiffs if the requested relief is not granted here. T.G. has been out of school for nearly a month and, without the intervention of this Court, will continue to do so for an indefinite time period. As described by his father, he has significantly regressed during virtual learning and his time already at home

without the structure of attending school during the day and requires an appropriate placement at the start of the school year. It is hard to imagine that there would be substantial harm to defendants, or that it would be particularly burdensome, if they are ordered to maintain T.G.'s placement at KDES while alternate appropriate placements are explored, as he has been attending the program for many years and has progressed there.

V.     CONCLUSION.

As demonstrated in this Memorandum, the plaintiffs meet the standard for injunctive relief. Therefore, plaintiffs respectfully request that this motion for a Temporary Restraining Order and Preliminary Injunction be granted, and that defendants be ordered to maintain T.G.'s placement at KDES pursuant to the "stay put" protections of the IDEA. Plaintiffs therefore respectfully request that this Court issue the requested injunctive relief.

Respectfully submitted,

  /s/ (filed electronically)
| Michael J. Eig | #912733 |
| Paula A. Rosenstock | #494580 |
| Meghan M. Probert | #1004929 |
| Haylie M. Iseman | #471891 |

MICHAEL J. EIG AND ASSOCIATES, P.C.
5454 Wisconsin Avenue, Suite 760
Chevy Chase, Maryland 20815
(301) 657-1740

Counsel for Plaintiffs